<u>**FOR PUBLICATION**</u>

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| SABINE OIL & GAS CORPORATION, *et al.*, | ) Case No. 15-11835 (SCC) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| SABINE OIL & GAS CORPORATION, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) Adversary Proceeding |
| | ) No. 16-01042 (SCC) |
| - against - | ) |
| | ) |
| HPIP GONZALES HOLDINGS, LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| SABINE OIL & GAS CORPORATION, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) Adversary Proceeding |
| | ) No. 16-01043 (SCC) |
| - against - | ) |
| | ) |
| NORDHEIM EAGLE FORD GATHERING, LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM DECISION AND ORDER ON**
**(I) MOTIONS FOR STAY PENDING APPEAL AND (II) EXPEDITED**
**REQUESTS FOR CERTIFICATION OF ORDERS FOR DIRECT APPEAL**
<u>**PURSUANT TO 28 U.S.C. § 158(d)(2) AND FED. R. BANKR. P. 8006(f)**</u>

A P P E A R A N C E S :

KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
601 Lexington Avenue

New York, NY 10022
By:    Jonathan S. Henes, P.C.
       Christopher Marcus, P.C.

300 North LaSalle
Chicago, IL 60654
By:    Ryan Blaine Bennett, Esq.

555 California Street
San Francisco, CA 94104
By:    Mark McKane, P.C.

600 Travis Street
Houston, TX 77002
By:    Anna Rotman, P.C.
       Nicolas Thompson, Esq.
*Counsel to the Debtors*

BRACEWELL LLP
1251 Avenue of the Americas, 49th Floor
New York, NY 10020
By:    Robert G. Burns, Esq.

711 Louisiana Street, Suite 2300
Houston, TX 77002
By:    William A. (Trey) Wood III, Esq.
       Jason G. Cohen, Esq.
       Yvonne Y. Ho, Esq.
*Counsel to Nordheim Eagle Ford Gathering, LLC*

LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022
By:    Keith A. Simon, Esq.
       Paul A. Serritella, Esq.
       Annemarie V. Reilly, Esq.
*Counsel to HPIP Gonzales Holdings, LLC*

**SHELLEY C. CHAPMAN**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court are (i) the motion of Nordheim Eagle Ford Gathering, LLC ("Nordheim") for an order staying the Court's May 11, 2016 Order Authorizing Rejection of Certain Executory Contracts [Dkt. No. 1082] (the "Rejection Order") pending Nordheim's appeal of the Rejection Order (the "Rejection Stay Motion");[1] (ii) Nordheim's expedited request for direct certification to the United States Court of Appeals for the Second Circuit (the "Second Circuit") of its appeal of the Rejection Order (the "Rejection Certification Request");[2] (iii) Nordheim's motion for an order staying the Court's May 11, 2016 Order on Debtors' Motion for Summary Judgment and Nordheim's Motion for Judgment on the Pleadings [Adv. Pro. No. 16-1043, Dkt. No. 22] (the "Nordheim Summary Judgment Order") pending Nordheim's appeal of the Nordheim Summary Judgment Order (the "Summary Judgment Stay Motion");[3] and (iv) Nordheim's expedited request for direct certification to the Second Circuit of its appeal of the Nordheim Summary Judgment Order (the "Summary Judgment Certification Request").[4]    On May 24, 2016, HPIP Gonzales Holdings, LLC ("HPIP") filed a joinder to the Rejection Certification Request (collectively, with the Rejection Certification Request and the Summary Judgment Certification Request, the "Certification Requests").[5]

---

[1]    Case No. 15-11835, Dkt. No. 1099.

[2]    Case No. 15-11835, Dkt. No. 1100.

[3]    Adv. Pro. No. 16-1043, Dkt. No. 29.  On May 20, 2016, one week after the filing of the Rejection Stay Motion, Nordheim filed the Summary Judgment Stay Motion, which motion states that "[g]iven that the [Summary Judgment Order] provides the definitive ruling on the issues preliminarily resolved by the Rejection Order, Nordheim believed that the request for a stay was more appropriately directed at the Rejection Order.  In an abundance of caution, however, and for the reasons stated in the [Rejection Stay Motion], which are incorporated fully by reference herein, Nordheim moves for an order staying the [Summary Judgment Order] until the underlying legal issues are resolved on appeal."  *Id.* p. 2.

[4]    Adv. Pro. No. 16-1043, Dkt. No. 25.

[5]    Case No. 15-11835, Dkt. No. 1143.

## Procedural History

This dispute initially arose when the above-captioned debtors (the "Debtors") filed their Omnibus Motion for Entry of an Order Authorizing Rejection of Certain Executory Contracts pursuant to section 365 of the Bankruptcy Code (the "Rejection Motion")[6] seeking to reject the Nordheim Agreements and the HPIP Agreements (each as defined below). By decision dated March 8, 2016 (the "Rejection Decision"),[7] the Court granted the Rejection Motion, but it concluded that, consistent with the Second Circuit's decision in *Orion Pictures Corp. v. Showtime Networks*,[8] in the procedural context of a motion to reject an executory contract, it was unable to make a final determination as to whether the covenants at issue were covenants "running with the land." Accordingly, in authorizing the rejection of the Nordheim Agreements and the HPIP Agreements, the Court provided its non-binding analysis on the "running with the land" issue, but it noted that further proceedings would be necessary in order to enable the Court to render a binding ruling on the issue.

The Debtors subsequently commenced adversary proceedings against Nordheim and HPIP, respectively, seeking declaratory judgments that the covenants contained in the Nordheim Agreements and the HPIP Agreements do not run with the land. The Debtors moved for summary judgment, and Nordheim and HPIP moved for judgment on the pleadings. On May 3, 2016, the Court issued its Memorandum Decision on (I) Motions of Nordheim Eagle Ford Gathering, LLC and HPIP Gonzales Holdings, LLC for Judgment on the Pleadings and (II) Debtors' Omnibus Motion for Summary Judgment (the "Summary Judgment Decision"),[9] which

---

[6]     Case No. 15-11835, Dkt. No. 371.

[7]     *See* Bench Decision on Debtors' Omnibus Motion to Authorize Rejection of Certain Executory Contracts, Case No. 15-11835, Dkt. No. 872, *In re Sabine Oil & Gas Corp.*, 547 B.R. 66 (Bankr. S.D.N.Y. 2016).

[8]     *Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993).

[9]     Case No. 15-11835, Dkt. No. 1063; Adv. Pro. No. 16-1042, Dkt. No. 22; Adv. Pro. No. 16-1043, Dkt. No. 20; *In re Sabine Oil & Gas Corp.*, 2016 Bankr. LEXIS 1905 (Bankr. S.D.N.Y. May 3, 2016).

(i) granted the Debtors' omnibus motion for summary judgment; (ii) denied the motions of Nordheim and HPIP for judgment on the pleadings; and (iii) held that the covenants at issue do not run with the land either as real covenants or as equitable servitudes.  On May 11, 2016, the Court entered the Rejection Order, the Nordheim Summary Judgment Order, and the Order on Debtors' Motion for Summary Judgment and HPIP's Motion for Judgment on the Pleadings (the "HPIP Summary Judgment Order").[10]  Nordheim subsequently filed notices of appeal of the Rejection Order and the Nordheim Summary Judgment Order;[11] HPIP filed a notice of appeal of the Rejection Order and the HPIP Summary Judgment Order.[12]

By the Rejection Stay Motion and the Summary Judgment Stay Motion, Nordheim seeks, pursuant to Rules 8007 and 9006(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), entry of an order staying the Rejection Order and the Nordheim Summary Judgment Order pending its appeal of such orders.  By the Certification Requests, Nordheim requests direct certification of its appeal of the Rejection Order and of its appeal of the Nordheim Summary Judgment Order to the Second Circuit.

The Debtors objected to the Rejection Stay Motion, the Summary Judgment Stay Motion, the Rejection Certification Request, and the Summary Judgment Certification Request.[13]  A hearing on the four motions was held on June 2, 2016 (the "Hearing").[14]

**Background**

Although the Court assumes familiarity with the prior record of these proceedings, the

---

[10]    Adv. Pro. No. 16-1042, Dkt. No. 23; Case No. 15-11835, Dkt. No. 1083.

[11]    Adv. Pro. No. 16-1043, Dkt. No. 24; Case No. 15-11835, Dkt. No. 1098.

[12]    Adv. Pro. No. 16-1042, Dkt. No. 24; Case No. 15-11835, Dkt. No. 1142.  The two appeals filed by HPIP have been assigned to the Hon. Jed S. Rakoff as Case Nos. 16-cv-4127 and 16-cv-4132 (S.D.N.Y.).

[13]    Debtors' Objection to Certification Requests [Adv. Pro. No. 16-1042, Dkt. No. 26; Adv. Pro. No. 16-1043, Dkt. No. 31; Case No. 15-11835, Dkt. No. 1158]; Objection to Rejection Stay Motion and Summary Judgment Stay Motion [Adv. Pro. No. 16-1043, Dkt. No. 30; Case No. 15-11835, Dkt. No. 1156].

[14]    Nordheim filed a reply to each of the objections.  *See* Case. No. 15-11835, Dkt. Nos. 1181, 1182; Adv. Pro. No. 16-1043, Dkt. Nos. 32, 33.

Rejection Decision, and the Summary Judgment Decision, it will provide some limited factual

background for the purposes of this Decision.

One of the Debtors, Sabine Oil & Gas Corporation ("Sabine"), is a party to two contracts

with Nordheim, each dated January 23, 2014, relating to the gathering of gas and condensate

produced by Sabine from a designated area (together, the "Nordheim Agreements").  Sabine is

also party to two contracts with HPIP, one dated May 3, 2013 and the other dated as of May

2014, relating to the gathering, handling, and disposal of oil, gas, and water produced by Sabine

from a designated area (together, the "HPIP Agreements").  In the Rejection Decision and the

Summary Judgment Decision, the Court summarized many of the central provisions of the

Nordheim Agreements and the HPIP Agreements and it incorporates those summaries by

reference here.[15]

Nordheim and HPIP have argued throughout these proceedings that (i) the Nordheim

Agreements and the HPIP Agreements contain real covenants that "run with the land;" or (ii) in

the alternative, such agreements contain covenants that are equitable servitudes.  Based on the

undisputed facts and applicable law, the Court held in the Summary Judgment Decision

(consistent with its statements in the Rejection Decision) that the covenants at issue in the

Nordheim Agreements and the HPIP Agreements[16] do not run with the land under Texas law

either as real covenants or as equitable servitudes.

**Discussion**

    **A.  Certification Requests**

---

[15]    *See* Rejection Decision pp. 2-4; Summary Judgment Decision pp. 3-4.

[16]    As identified in the Rejection Decision and the Summary Judgment Decision, the covenants at issue are (i) the Debtors' dedication to HPIP of certain oil, gas and water products and certain leases to the performance of the HPIP Agreements; (ii) the Debtors' dedication to Nordheim of certain gas and condensate products to the performance of the Nordheim Agreements; and (iii) the Debtors' covenant to pay Nordheim a gathering fee. Rejection Decision p. 9; Summary Judgment Decision p. 7 n. 29.

By the Certification Requests, Nordheim argues that because (i) the Rejection Order and the Nordheim Summary Judgment Order and (ii) the Rejection Decision and Summary Judgment Decision "turn[] on questions of first impression under Texas law: whether a debtor's contracts dedicating all hydrocarbons attributable to certain acreage to the counterparty's pipeline and gathering systems, and agreeing to pay a transportation fee, create real property interests – either as covenants that run with the land or equitable servitudes," the Rejection Order and the Nordheim Summary Judgment Order are uniquely suited for direct appeal.[17]  The Debtors disagree, arguing that (i) with respect to the Rejection Order, no novel issue of law exists which would support a request for direct certification because the Court's ruling as to the Rejection Order was based solely on its finding that the Debtor properly exercised its business judgment in seeking to reject the Nordheim Agreements and the HPIP Agreements pursuant to section 365 of the Bankruptcy Code and (ii) with respect to the Nordheim Summary Judgment Order, the Court's ruling was dependent on a fact-based, case-specific analysis of the agreements at issue and did not involve pure legal issues of the type that courts have deemed appropriate for direct appeal.  As a result, the Debtors submit that direct appeal of the Rejection Order and the Nordheim Summary Judgment Order to the Second Circuit is unwarranted.

Section 158(d)(2)(A) of title 28 of the United States Code states that an appeal may be taken directly to the relevant court of appeals

> . . . if the bankruptcy court, the district court, or the bankruptcy appellate panel involved, acting on its own motion or on the request of a party to the judgment, order, or decree described in such first sentence, or all the appellants and appellees (if any) acting jointly, certify that—
>
> (i)      the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;

---

[17]      Rejection Certification Request p. 2; Summary Judgment Certification Request p. 2.

> (ii)     the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or
>
> (iii)     an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken . . . .

28 U.S.C. § 158(d)(2)(A).[18]    Certification is warranted if any one of the three factors is established.  *See In re General Motors Corp.*, 409 B.R. 24, 27 (Bankr. S.D.N.Y. 2009) ("*General Motors*").  If the bankruptcy court certifies an order for direct appeal, the party seeking review must then seek authorization for the direct appeal from the appellate court.  28 U.S.C. § 158(d)(2)(A).

### 1.  No Controlling Law

By the Rejection Certification Request, Nordheim argues that the Rejection Order "readily meets the requirements for certification" under subsection (i) of 28 U.S.C. § 158(d)(2)(A) because the Rejection Decision addressed legal issues of first impression under Texas law which neither the Second Circuit nor the United States Supreme Court has previously addressed.[19]  The Summary Judgment Certification Request contains a nearly identical argument. At bottom, Nordheim argues (inaccurately) that because "th[e] Court acknowledged in the Rejection Decision that 'there appears to be no applicable binding decision of the Texas Supreme Court' that resolves whether the [Nordheim] Agreements create covenants running with the land,"[20] the "novelty" of these unsettled questions of Texas law warrants resolution by direct appeal to the Second Circuit.[21]  Specifically, Nordheim argues that the Court made two rulings as

---

[18]     Nordheim has not argued that subsection (iii) applies here; accordingly, this Decision will not address that subsection.

[19]     Rejection Certification Request p. 7.

[20]     Rejection Certification Request p. 7 (quoting Rejection Decision p. 12).

[21]     Rejection Certification Request p. 8 (contending that "the Rejection Order turns on pure questions of law whose acknowledged novelty warrants resolution by direct appeal").

to why the Nordheim Agreements fail to satisfy the requirements under Texas law for a covenant to run with the land—one, as to horizontal privity of estate and another, as to whether the covenants "touch and concern" the land—each of which raises novel questions that should be directly certified for appeal to the Second Circuit.[22]

Each of Nordheim's arguments fails.  Neither the appeal of the Rejection Order nor the appeal of the Nordheim Summary Judgment Order is appropriate for direct certification.  The Rejection Decision addressed no legal issues of first impression; rather, the Court employed the business judgment test and found that "the decision to reject the Nordheim Agreements and the HPIP Agreements is a reasonable exercise of the Debtor's business judgment."[23]  The business judgment standard and its application to a decision to reject pursuant to section 365 of the Bankruptcy Code involve well-established principles of law, have been addressed in countless decisions in this Circuit, and do not "involve[] a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States," which would be appropriate for direct certification to the Second Circuit pursuant to section 158(d)(2)(A)(i) of title 28.  *See, e.g., Faulkner v. Kornman*, 2012 WL 293230, at *3 (Bankr. S.D. Tex. Jan. 30, 2012) (finding that "[t]his question is inappropriate for certification because controlling decisions exist"); *In re Nortel Networks Corp.*, 2010 WL 1172642, at *1 (Bankr. D. Del. Mar. 18, 2010) (holding that certification was not authorized where "[t]here is an abundance of controlling law on the controlling legal issue"); *General Motors*, 409 B.R. at 28 (denying certification where there was "a controlling judgment issued by the Second Circuit").

---

[22]      If the Certification Requests were to be granted, Nordheim has openly stated its intention to immediately request that the Second Circuit send certain key legal questions to the Texas Supreme Court for its review and guidance.

[23]      Rejection Decision p. 18.

With respect to the Summary Judgment Decision, the Court's decision relied on a case-specific analysis of (i) the applicable language in the Nordheim Agreements and the HPIP Agreements and (ii) the relevant facts of these cases to determine that the covenants at issue do not run with the land either as real covenants or as equitable servitudes. Significantly, as the Debtors correctly point out, the Court did not purport to determine the proper construction of unsettled issues of Texas law with respect to the requirement of horizontal privity or otherwise. Instead, the Court noted that no open question under Texas law need be reached for the Court to determine that the applicable covenants do not run with the land. With respect to the issue of whether horizontal privity is a requirement under Texas law for a covenant to run with the land, the Court stated, "[a]ccordingly, without concluding whether or not horizontal privity of estate is indeed a requirement under Texas law, the Court finds that horizontal privity does not exist between Sabine and Nordheim or between Sabine and HPIP."[24]

Moreover, the Second Circuit has held that direct appeal is appropriate for "cases involving 'questions[s] of law not heavily dependent on the particular facts of a case[.]'" *Mark IV Indus., Inc. v. N.M. Env't Dep't*, 452 B.R. 385, 388 (S.D.N.Y. 2011) (quoting *Weber v. U.S.*, 484 F.3d 154, 158 (2d Cir. 2007)) (denying certification where the issue "involve[d] mixed questions of law and fact, rather than pure questions of law appropriate for direct appeal"); *see also In re Am. Home Mortgage Inv. Corp.*, 408 B.R. 42, 44 (Bankr. D. Del. 2009) (holding that "those issues that are specifically linked to the Bankruptcy Court's decision are, in the Court's view. . . , mixed questions that implicate the particular circumstances of this case and, as such, they are not pure legal questions warranting direct certification"). Because the Summary Judgment Decision rests squarely on the specific language in the agreements at issue here rather than on a pure legal question (a point which Nordheim itself appears to acknowledge in framing

---

[24]    Summary Judgment Decision p. 15.

its "Questions Presented on Appeal" relating to the covenants in the Nordheim Agreements),[25]
the Nordheim Summary Judgment Order is not appropriate for direct appeal pursuant to the first
prong of section 158(d)(2)(A)(i) of title 28.

### 2.    Matter of Public Importance

Subsection 158(d)(2)(A)(i) provides an alternative basis for an appeal to be eligible for
direct certification if "the judgment, order, or decree . . . involves a matter of public importance."
28 U.S.C. § 158(d)(2)(A)(i).  Courts have held that public importance exists when the matter on
appeal "transcend[s] the litigants and involves a legal question the resolution of which will
advance the cause of jurisprudence to a degree that is usually not the case." *Mark IV Indus.*, 452
B.R. at 388-389.  "An appeal that impacts only the parties, and not the public at large, is not a
matter of public importance." *Id.* (quoting *In re Nortel Networks Corp.*, 2010 Bankr. LEXIS
812, 2010 WL 1172642, at *2).

By the Certification Requests, Nordheim argues that certification of its appeals for direct
appeal to the Second Circuit "is particularly appropriate because the Rejection Order [and the
Nordheim Summary Judgment Order] present[] matters of public importance with ramifications
extending far beyond the parties in this case."[26]  Citing news articles in support of its argument,
Nordheim asserts that resolution of the issues at hand will have "far-reaching impact" on the
midstream industry because similar dedication covenants are contained in agreements between
other midstream providers (like Nordheim) and producers (like Sabine).[27]  Finally, Nordheim
emphasizes that, under the Texas Rules of Appellate Procedure, only the Second Circuit—and

---

[25]    *See* Rejection Certification Request p. 6; Summary Judgment Certification Request pp. 6-7 ("The following
questions should be certified for direct appeal: A. Whether, under Texas law, the debtors' covenants in the
Gathering Agreement and Condensate Agreement . . . are real covenants that run with the land[.]" and  "B. Whether,
under Texas law, the covenants in the Gathering Agreement and Condensate Agreement create equitable servitudes
that run with the land[.]").
[26]    Rejection Certification Request p. 14; Summary Judgment Certification Request p. 14.
[27]    Rejection Certification Request p. 15.

not a District Court—has the authority to certify unsettled questions of Texas law to the highest court in Texas.[28]    Accordingly, Nordheim argues that direct certification will enable it to expedite resolution of the underlying questions of Texas law raised by its appeals because, if direct certification is granted by this Court, Nordheim intends to request that the Second Circuit certify the underlying legal issues to the Texas Supreme Court.

The Debtors argue that Nordheim misinterprets the public importance standard and mischaracterizes this Court's orders.  The Debtors instead submit that this dispute is, at its very essence, a dispute between private parties over their agreements and is not a matter of public importance as such term is used in section 158 of title 28.  While "Nordheim tries desperately . . . to re-cast the Court's decision about the reasonableness of Sabine's actions concerning its contracts as a referendum on Texas property law and all contracts of similarly-situated parties in the oil and gas industry,"[29] the Debtors are correct in their assertion that the Court's fact-specific holdings did not extend beyond the circumstances and contracts in this case.  Simply put, by the Rejection Decision, the Court authorized Sabine to reject the Nordheim Agreements and the HPIP Agreements as a proper exercise of its business judgment; by the Summary Judgment Decision, the Court determined that, after analyzing the specific language at issue in such agreements, the covenants were not covenants that run with the land under applicable Texas law.

While Nordheim suggests that "the far-reaching impact of allowing producers like Sabine to reject dedication covenants that are vital to the midstream industry underscores the urgent need for direct review,"[30] this sweeping suggestion is entirely speculative.  Nor is the Court

---

[28]    Rejection Certification Request p. 18 (citing TEX. R. APP. P. 58.1 (authorizing the Texas Supreme Court to "answer questions of law certified to it by any federal appellate court if the certifying court is presented with determinative questions of Texas law having no controlling Supreme Court precedent"); TEX. CONST. art. 5, § 3-c(a) (investing Texas Supreme Court with "jurisdiction to answer questions of state law certified from a federal appellate court")).

[29]    Debtors' Objection to Certification Requests p. 14.

[30]    Rejection Certification Request p. 15.

persuaded that Nordheim's appeals of the Rejection Order and the Nordheim Summary Judgment Order each constitutes a matter of "public importance" because this dispute has received substantial news coverage or because the oil and gas midstream industry is watching this case closely. Simply because a matter is important to certain members of the public does not render it a matter of "public importance" that meets the standard for direct certification. Rather, as the District Court has stated, the matter on appeal must "transcend" the litigants and involve "a legal question the resolution of which will advance the cause of jurisprudence to a degree that is usually not the case." *Mark IV Indus.*, 452 B.R. 385 at 388-89; *see also General Motors*, 409 B.R. at 28 (emphasizing that the "public importance" inquiry focuses on whether the decision "'involves a *question of law*'" that "'involves a matter of public importance'"). That is clearly not the case here. As previously stated, the Rejection Order permitted rejection of the applicable agreements based on the business judgment test for rejecting contracts in bankruptcy—it involved a settled question of law that does not carry the level of "public importance" required for a direct appeal. As to the Nordheim Summary Judgment Order, although the Summary Judgment Decision may be a matter of public interest, the Court's rulings did not purport to settle an open question of law involving a matter of public importance. Instead, the Court's holdings pertained solely to the facts and circumstances of this case; the Summary Judgment Decision resolved a question of contract interpretation, not a question of statutory interpretation.

### 3.  Conclusion

Accordingly, for all of the reasons set forth herein, the Certification Requests are hereby denied.

**B.  Motions for Stay Pending Appeal**

By the Rejection Stay Motion and the Summary Judgment Stay Motion, Nordheim

argues that each of the four factors considered by courts in determining whether a stay pending

appeal is warranted favors staying the Rejection Order and the Nordheim Summary Judgment

Order pending appeal.  The Debtors disagree.  The Court will discuss each of the factors in turn.

**1.  Applicable Law – Stay Pending Appeal**

Federal Rule of Bankruptcy Procedure 8007(a)(1) provides that

> In General. Ordinarily, a party must move first in the bankruptcy court for the
> following relief:
> (A) a stay of a judgment, order, or decree of the bankruptcy court pending appeal;
> (B) the approval of a supersedeas bond;
> (C) an order suspending, modifying, restoring, or granting an injunction while an
>     appeal is pending; or
> (D) the suspension or continuation of proceedings in a case or other relief
>     permitted by subdivision (e).

Fed. R. Bankr. P. 8007(a)(1).

The decision as to whether or not to grant a stay of an order pending appeal lies within

the sound discretion of the court.  *See*, *e.g.*, *General Motors*, 409 B.R. at 30; *In re New York*

*Skyline, Inc.*, 520 B.R. 1, 5 (S.D.N.Y. 2014).  As the District Court held in *ACC Bondholder*

*Grp. v. Adelphia Commc'ns. Corp. (In re Adelphia Commc'ns Corp.)*, 361 B.R. 337, 346

(S.D.N.Y. 2007) ("*Adelphia*"), the court must consider four factors in exercising this discretion:

"(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will

suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a substantial

possibility, although less than a likelihood, of success on appeal, and (4) the public interest that

may be affected."  *See also Sabine Oil & Gas Corp.*, 548 B.R. 674 (Bankr. S.D.N.Y. 2016).

This Court has stated that the burden on the movant seeking the extraordinary relief of a

stay is a "heavy" one.  *General Motors*, 409 B.R. at 30.  While certain courts in this Circuit have

held that, to prevail, the moving party must show "satisfactory evidence on all four criteria,"[31] other courts in this Circuit have held that the inquiry involves a balancing of the four factors and "[t]he lack of any one factor is not dispositive to the success of the motion."[32]

### 2. Discussion of Four-Factor Test for Stay Pending Appeal

In accordance with this Court's prior discussion in ruling on a motion for a stay pending appeal in this case, the Court declines to make a definitive determination as to whether the movant here is required to satisfy all four factors of the four-part test in order to succeed on its motions for a stay pending appeal; instead, the Court will employ the balancing approach utilized in *General Motors* and in other recent cases.[33]  The Court finds that it would reach the same conclusion—that Nordheim's two requests for a stay must both be denied—regardless of whether in the instant case the Court applies the rigid test (requiring compliance with all four factors) or the more generous balancing approach.  The Court will discuss each of the factors in turn.

### a. Irreparable Injury

A showing of probable irreparable harm is the "principal prerequisite" for the issuance of a stay pursuant to Bankruptcy Rule 8007, and such harm "must be 'neither remote nor speculative, but actual and imminent.'"  *See Sabine*, 548 B.R. at 681 (citing *Adelphia*, 361 B.R. at 347 (citations omitted)).  "[T]he moving party must demonstrate that such injury is likely

---

[31]    *See General Motors*, 409 B.R. at 30 (citing *In re Turner*, 207 B.R. 373, 375 (B.A.P. 2d Cir. 1997)).

[32]    *See, e.g., Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002); *Beeman v. BGI Creditors' Liquidating Trust (In re BGI, Inc.)*, 504 B.R. 754, 762 (S.D.N.Y. 2014); *Adelphia*, 361 B.R. at 346-47 (articulating the disagreement as to the standard, stating that "the Second Circuit has never articulated such a rigid rule of law," and determining to follow the practice of weighing the factors).

[33]    *See In re Sabine*, 548 B.R. at 681.  In *General Motors*, Judge Gerber commented that, "[w]hile, as Judge Lynch noted in *DJK*, the 2d Circuit BAP has held that failure to satisfy any prong of the 4-part test 'will doom the motion,' . . . the Circuit and more recent cases have engaged in a balancing process with respect to the four factors, as opposed to adopting a rigid rule."  *General Motors*, 409 B.R. at 30.  After stating that, for purposes of his decision, he would assume the balancing approach was more appropriate, Judge Gerber declined to make a definitive determination with respect to the correct application of the four-factor test, given that the last three factors overwhelmingly compelled denial of the stay in that case.  *Id.*

13

before the other requirements will be considered." *In re Perry H. Koplik & Sons, Inc.*, 2007 WL 781905, at *1 (Bankr. S.D.N.Y. Mar. 13, 2007).

Nordheim argues that, absent a stay, "the Rejection Order will jeopardize what Nordheim maintains—and what the appellate court could conclude—are real property interests created by the dedication and transportation covenants in the Gathering Agreements."[34] Further, Nordheim argues that Sabine's "insolvency" may limit its ability to pay damages to Nordheim and as a result, Nordheim is unable to remedy its harm through monetary relief. In contrast, the Debtors argue that Nordheim will not suffer irreparable injury while its appeals are pending, for several reasons.[35]

To establish irreparable harm, a movant must allege an injury "'requiring a remedy of more than mere money damages.'" *Ford v. Reynolds*, 316 F.3d 351, 355 (2d Cir. 2003) (citing *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989)). The Court has held that the covenants in the Nordheim Agreements do not create real property rights or interests. Assuming, *arguendo*, that Nordheim were found, on appeal, to possess real property rights or interests under the terms of the Nordheim Agreements, Nordheim would nonetheless have an adequate remedy in the form of monetary damages; the Nordheim Agreements contain liquidated damages provisions that enable the calculation of monetary damages. A decision affecting an alleged interest in real property does not automatically create irreparable injury as a matter of law where the harm can be addressed through money damages such as those explicitly calculable under the terms of the Nordheim Agreements. *See*, *e.g.*, *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989) ("The injury must be one requiring a remedy of

---

[34]    Rejection Stay Motion p. 17.
[35]    Debtors' Objection to Rejection Stay Motion p. 8 (asserting that the Rejection Stay Motion fails because Nordheim cannot "'demonstrate that irreparable injury is *likely* in the absence of [a stay.]'" (citing *Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 212 (2d Cir. 2014) (quoting *Winter v. NRDC*, 555 U.S. 7, 20 (2008)))).

more than mere money damages.  A monetary loss will not suffice unless the movant provides evidence of damage that cannot be rectified by financial compensation.").

At the Hearing, the Court asked counsel for Nordheim a series of questions regarding Nordheim's assertion that the deprivation of its alleged real property rights would create irreparable harm.  Counsel confirmed that the gas gathering agreement between Sabine and Nordheim provides for a ten-year term, at the conclusion of which either party can terminate with proper notice to the other party, in accordance with the agreement's terms.[36]  If, hypothetically, Sabine were to terminate its gas gathering agreement with Nordheim at least thirty days prior to the expiration of the ten-year term of the agreement (in accordance with the agreement's terms), Nordheim's alleged real property rights would have no value at that point in time.  If Sabine had failed to pay amounts due under the agreement, Nordheim may have a monetary claim that could be quantified, but it cannot demonstrate that it would be irreparably harmed in line with the traditional concept of irreparable harm to a party's real property interest.[37]  The facts are squarely at odds with irreparable harm here—Nordheim cannot establish otherwise.

Indeed, counsel for the Debtors, at the Hearing, presented additional appellate reversal scenarios, each of which still did not support a finding of irreparable harm to Nordheim.   If, hypothetically, the Nordheim Summary Judgment Order were to be reversed on appeal while the Rejection Order were affirmed (*i.e.*, if Nordheim were found to have real property interests under the Nordheim Agreements), counsel for the Debtors suggested that Nordheim could assert a

---

[36]      June 1, 2016 Hr'g Tr. at 49:10-51:22.
[37]      The "traditional concept" of irreparable harm in the context of a real property interest arises when the nature of the harm is directly related to the uniqueness or other subjective value of the real property at issue.  *See*, *e.g.*, *Pelfresne v. Williams Bay*, 865 F.2d 877, 883 (7th Cir. 1989) ("[a]s a general rule, interference with the enjoyment or possession of land is considered 'irreparable' since land is viewed as a unique commodity for which monetary compensation is an inadequate substitute"); *J.C. Penney Co. v. Giant Eagle, Inc.*, 813 F. Supp. 360, 369 (W.D. Pa. 1992) ("the damage to interests in real estate are generally viewed as unique").  Here, in contrast, Nordheim's alleged harm is solely financial.

claim against the Debtors and may pursue such claim through the commencement of an action in tort against Sabine under Texas law for trespass on Nordheim's real property. Even so, any judgment obtained in such hypothetical litigation would be injunctive in nature and/or compensable in money damages. Similarly, if both the Rejection Order and the Nordheim Summary Judgment Order are reversed on appeal, Nordheim would arguably have an additional quantifiable claim for monetary relief assertable as a claim against the Debtors. As Debtors' counsel stated at the Hearing, "[t]here is no scenario that we can imagine where they actually ever get to irreparable harm at all."[38]

The Court also rejects Nordheim's assertion that it will be irreparably harmed because Sabine's insolvency "underscores that the harm to Nordheim resulting from the Rejection Order could not be sufficiently rectified by monetary relief."[39] Debtors rejecting contracts in bankruptcy often are of questionable solvency; the insolvency of a debtor counterparty standing alone does not support a claim of irreparable injury sufficient to satisfy the standard for a stay pending appeal. As the Debtors correctly assert, "[i]f it were otherwise, irreparable injury would lurk in every bankruptcy, threatening to stall or derail the proceeding by stay or injunction whenever a creditor was at risk of recovering less than 100 cents on the dollar."[40] Moreover, any hypothetical future risk of nonpayment alleged by Nordheim is neither "actual" nor "imminent," and Nordheim's assertions in this regard fail to provide a basis for any finding that it will suffer irreparable harm during the pendency of its appeals because of Sabine's insolvency.

### b.  Potential Harm to Other Parties

With respect to the second prong of the test for a stay pending appeal, the movant must establish that the non-moving party or other parties will not suffer substantial harm if the stay is

---

[38]    June 1, 2016 Hr'g Tr. at 65:4-6 (McKane).
[39]    Rejection Stay Motion pp. 17-18.
[40]    Debtors' Objection to Rejection Stay Motion and Summary Judgment Stay Motion p. 10.

granted. "In other words, the moving party must show that the balance of harms tips in favor of granting the stay." *See Sabine*, 548 B.R. at 682 (citing *Adelphia*, 361 B.R. at 349 (citations omitted)). While Nordheim argues that "[t]he minimal impact of a stay on Sabine's interests supports staying the Rejection Order until Nordheim's appeal is resolved,"[41] the Court finds that there would in fact be substantial harm to the Debtors and their estates if a stay were granted.

In arguing that a stay pending appeal would place Sabine in no worse a position than it occupied prior to entry of the Rejection Order, Nordheim summarily dismisses (i) the substantial costs to the Debtors of continuing to accrue liability for deficiency payments under the Nordheim Agreements and (ii) the Court's recent order authorizing Sabine's entry into an agreement with DCP South Central Texas LLC ("DCP"),[42] implementation of which would be extremely challenging for the Debtors were a stay to be granted and which may expose Sabine to damages and additional expenses under its agreement with DCP.[43] These additional costs would be particularly burdensome on the Debtors, who are attempting to preserve cash and minimize costs in their chapter 11 cases in order to maximize value for the estates, confirm a plan, and emerge from chapter 11.

When presented with these cognizable harms to the Debtors, Nordheim states that "the real dollar-amount of those risks . . . are more properly directed at the amount of bond that this Court may require to secure a stay pending appeal, rather than to the issuance of a stay itself."[44] Nordheim's reference to the amount of a bond misses the mark, however, inasmuch as

---

[41]     Rejection Stay Motion p. 19.

[42]     Case No. 15-11835, Dkt. No. 1114. Sabine's agreement with DCP eliminates the need for Nordheim to serve as an intermediary between the Debtors and DCP to route the Debtors' mineral products. The Debtors have stated that the elimination of Nordheim's services will save the estate approximately $200,000 per month. Objection to Stay Motions p. 11.

[43]     At the Hearing, counsel for the Debtors confirmed that the DCP connection has been completed and that within two days, hydrocarbons would be flowing through the connection. *See* June 1, 2016 Hr'g Tr. at 66:11-15 (McKane).

[44]     Nordheim's Reply to Rejection Stay Motion and Summary Judgment Stay Motion p. 12.

17

Nordheim's real concern seems to be a potential loss of rights if a plan is confirmed in the Debtors' cases prior to Nordheim's obtaining appellate relief.[45]   While no party has attempted to quantify the amount of a bond sufficient to cover a stay of a confirmation order, which amount would indeed be considerable, the Court need not consider this unripe hypothetical at this juncture.   Simply put, any stay would harm the Debtors' ability to reorganize and emerge from chapter 11.[46]

### c.   Substantial Possibility of Success on Appeal

"The 'substantial possibility of success' test is considered an intermediate level between 'possible' and 'probable' and is 'intended to eliminate frivolous appeals.'"   *See Sabine*, 548 B.R. at 683-84 (citing *In re 473 West End Realty Corp.*, 507 B.R. 496, 501 (Bankr. S.D.N.Y. 2014) (citing to *Country Squire*, 203 B.R. 182, 104 (B.A.P. 2d Cir. 1996))).   The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury that the plaintiff will suffer absent the stay; in other words, "more of one excuses less of the other."   *In re Sabine*, 548 B.R. at 684 (quoting *473 West End Realty Corp.*, 507 B.R. at 502 (citing *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002) (quotation omitted))).

---

[45]        The hearing on confirmation of the Debtors' proposed plan of reorganization commenced on June 13, 2016. At the confirmation hearing, Nordheim will have a full and fair opportunity to litigate all of its objections to the proposed plan.   Nordheim's allegation that it possesses a risk of equitable mootness (which risk, the Court notes, is not ripe at this time), is insufficient to support a finding of irreparable harm.   *See¸ e.g.*, *General Motors*, 409 B.R. at 31 (stating that a majority of courts have held that a risk of mootness, standing alone, does not constitute irreparable harm) (citing *Adelphia*, 361 B.R. at 347 n.39); *see also In re DJK Residential, LLC*, 2008 WL 650389, at *4 (finding that no irreparable harm demonstrated by risk that appeal will become equitably moot upon confirmation where the "Bankruptcy Court has not yet approved the Plan and will not do so until after a hearing at which all objections will be heard and considered").

[46]        Were the confirmation process in the Debtors' cases to be impeded or postponed by the granting of a stay pending appeal, as the Court noted in its prior decision denying a stay pending appeal in these cases, numerous potential harms may befall the Debtors, including, but not limited to, (i) lost strategic opportunities; (ii) difficulty in recruiting and retaining talent; (iii) incurrence of administrative and professional expenses; (iv) placing plan settlements in jeopardy; and (v) exposing the equity to be granted to non-moving creditors to market volatility and other risks.   *See In re Sabine*, 548 B.R. at 683 (citing *In re Tribune Co.*, 477 B.R. 465, 478-80 (Bankr. D. Del. 2012); *Adelphia*, 361 B.R. at 354).

18

Nordheim has failed to demonstrate a substantial possibility of success on its appeal of the Rejection Order. As the Debtors point out, Nordheim does not challenge (i) the Court's application of the business judgment test in the context of the Debtors' rejection of contracts pursuant to section 365 of the Bankruptcy Code and (ii) the Court's resulting conclusion that the Debtors' determination to reject the Nordheim Agreements was a reasonable exercise of their business judgment. Moreover, even if an appellate court were to conclude that the covenants at issue in the Nordheim Agreements run with the land and are not subject to "rejection," such a ruling would not affect the Court's grant of authority to the Debtors to reject the Nordheim Agreements while preserving such real property rights as Nordheim may have.[47]

With respect to the Nordheim Summary Judgment Order, the Court acknowledges that there is more than a trivial possibility that some portion of the Summary Judgment Decision may be reversed or modified on appeal. Notwithstanding the fact that the Rejection Stay Motion and the Summary Judgment Stay Motion misstate certain portions of the Court's rulings, the Court declines to restate its conclusions here; instead, it observes that reasonable judicial minds could disagree on certain unsettled issues of Texas law.[48] The presence of an uncertain legal framework and the existence of some possibility of success on appeal on the Nordheim Summary Judgment Order only, however, carry insufficient weight to provide a basis for granting a stay pending appeal here, where the other three factors of the inquiry compel denial of a stay and where the Court finds no substantial possibility of success on appeal of the Rejection Order.

---

[47]     *See* Rejection Decision p. 9.

[48]     Moreover, as the Debtors point out, because the Rejection Decision and the Summary Judgment Decision rejected Nordheim's arguments based on the specific terms of the Nordheim Agreements themselves, and because the Court ruled in the alternative on the issue of horizontal privity, one possible outcome is that any appellate ruling on open questions under Texas law may leave the Court's rulings here unchanged.

### d. Public Interest

By the Rejection Stay Motion, Nordheim argues that "[t]he Court's decision that the dedication and transportation covenants do not create real property interests and therefore are subject to rejection threatens the contractual framework on which the midstream gas gathering and delivery industry relies."[49]  It asserts that a stay is warranted because it will suspend the "disruptive effect" of the Court's rulings until the legal issues are resolved on appeal, which would serve the public interest.

The Debtors contend that the public interest favors the expedient administration of bankruptcy proceedings and cite the Court's prior observation that "the goals of promoting the restructuring of the Debtors' obligations, the preservation of the Debtors' business, and the Debtors' emergence from chapter 11 are issues of significant public interest."  *See In re Sabine*, 548 B.R. at 685; *see also In re 473 West End Realty Corp.*, 507 B.R. at 508 (citing *In re Taub*, 2010 WL 3911360, at *6 (Bankr. E.D.N.Y. Oct. 1, 2010)) ("where, as here, those standards [for a stay] are not met, a stay pending appeal would injure the interests of sound case management in the bankruptcy process, and as a consequence, would also injure the public interest."); *In re Metiom, Inc.*, 318 B.R. 263, 272 (S.D.N.Y. 2004) ("[t]his Court finds that the public interest in the expeditious administration of bankruptcy cases as well as in the preservation of the [debtor's] assets for the purpose of paying creditors rather than litigation of claims lacking a substantial possibility of success, outweighs the public interest in resolving the issues presented here on appeal.").

The Court agrees with the Debtors, and the Court's statements regarding the "public importance" prong of the test for direct certification, discussed above, bear noting here as well.[50]

---

[49]   Rejection Stay Motion p. 15.
[50]   *See* pp. 9-11, *supra.*

Moreover, Nordheim's assertions regarding the effects of the Court's decisions on the midstream oil and gas industry ignore the fact-specific nature of the Court's rulings, which pertained to the covenants in the Nordheim Agreements only and were not rulings on "thousands of agreements in the oil and gas industry."  If debtors in other chapter 11 cases move to reject contracts containing similar covenants, the courts presiding over those cases will rule as they see fit based on the terms of those contracts.  The public interest does not support the grant of a stay pending appeal here.

### 3.  Conclusion

After balancing the parties' interests here and after considering each of the factors in the test for granting a stay pending appeal, for all of the foregoing reasons and in the exercise of its discretion pursuant to Bankruptcy Rule 8007, the Court hereby denies the Rejection Stay Motion and the Summary Judgment Stay Motion.

IT IS SO ORDERED.


Dated: June 15, 2016
New York, New York

/s/ Shelley C. Chapman
UNITED STATES BANKRUPTCY JUDGE